### ISLER et al. v. LUCKENBACH S. S. CO., Inc.

Circuit Court of Appeals, Second Circuit.
April 18, 1927.

No. 256.

**1. Shipping ⬥142—Delivery at Vancouver, for forwarding to New York, held delivery at "seaboard port of discharge," within bill of lading provisions requiring notice of cargo damages.**

Where bill of lading recited that goods shipped by named vessel from Japan were to be delivered from ship's tackle, where responsibility of ship shall cease, at port of Vancouver, to named railroad, by whom goods shall be delivered to railway company, or steamship company, or other carriers designated for forwarding to station nearest to New York via Panama, *held*, that Vancouver, and not New York, was "seaboard port of discharge," within provisions relating to services before and after delivery at seaboard port of discharge, and notice of cargo damages sustained after cargo left Vancouver was properly made under provisions relating to services after delivery at seaboard port of discharge.

**2. Carriers ⬥51—Construction of bill of lading giving effect to whole instrument is preferred to construction giving effect to part.**

Where bill of lading is capable of two constructions, one of which makes only part of its provisions effective, while the other makes entire bill of lading effective, construction giving effect to whole instrument is preferred.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in personam, for cargo damage, by Paul A. Isler and Charles H. Guye, copartners doing business under the name and style of Isler & Guye, against the Luckenbach Steamship Company, Inc. From a decree of dismissal libelants appeal. Reversed, with directions.

The shipment in question, consisting of bales of straw braid, was delivered to the Canadian Pacific Railway Company, at Kobe, Japan, on November 8, 1922, and the Canadian Pacific Railway Company's through bill of lading was then and there issued by it to the shipper.

The said bales of straw braid were loaded on board the Canadian Pacific steamship Empress of Asia, and by her carried to the port of Vancouver.

From Vancouver intermediate carriers delivered the said bales of straw braid to the Luckenbach Steamship Company, Inc., at Seattle, and it was there loaded on board the steamship Lewis Luckenbach for transportation to New York via Panama, under and in accordance with the terms and conditions of said through bill of lading.

The said bales of straw braid were transported by the steamship Lewis Luckenbach from Seattle to New York, where they arrived on December 26, 1922.

During the transportation on the steamship Lewis Luckenbach, the merchandise was damaged by sweat of hold.

The delivery of the merchandise to the libelants was completed on January 24, 1923.

Notice of claim in writing was given to the Luckenbach Steamship Company, Inc., by libelants, on February 8, 1923.

So far as material to this appeal the face of the bill of lading reads:

"Canadian Pacific Railway Company, Trans-Pacific Steamship Lines.

"Canadian Pacific Steamships, Limited, Managers.

"Through Eastbound Bill of Lading No. 8492.

"Shipped in apparent good order and condition from *Dodwell & Co., Limited,* on the steamship Empress of Asia * * * at the port of *Kobe* the property hereinafter mentioned * * * to be delivered in like apparent good order and condition from the ship's tackle (where the responsibility of the ship and its owners shall cease) at the port of Vancouver * * * unto the Canadian Pacific Railway Company, * * * by whom the goods shall be delivered to the railway company, or steamship company, or other carriers designated herein or intended to continue the transit, for forwarding (subject to the liberties, exceptions, and stipulations hereinafter mentioned) to the station nearest to *New York via Panama.* * * *

"This contract of carriage is further subject to the terms, conditions, liberties, restric-

tions, exceptions, and limitations herein contained, including those shown on the back hereof, upon which the rate of freight is adjusted.

"It is agreed that each of the carriers shall be responsible only for the goods whilst the same are in their own personal custody. The arrangements for through carriage are made for the convenience of shippers, and the responsibility of each carrier with regard to carriage and storage by other means than its own vessels or other vehicles or stores is to be that of forwarding agent only, and any claim for loss, damage, or delay must be made only against the person or company in whose custody the goods actually were at the time when the loss, damage, or delay was caused or arose."

The words and figures underscored in the foregoing quotation are written or typewritten in blanks provided for that purpose.

The greater part of the terms and conditions with respect to the carriage of the merchandise are found on the back of the bill of lading and are divided into two separate sets.

The first set of provisions, consisting of 26 paragraphs is captioned: "With respect to the service until delivery at the Seaboard Port of Discharge as within Mentioned."

Clause E W 3 exempts the carrier from damage arising from or consequent upon sweating, and clause E W 21 provides that no claim shall be sustainable unless written notice thereof be given within 10 days after discharge of the vessel.

The second set of provisions consisting of 8 paragraphs is captioned: "With respect to the Service after Delivery as Above Specified at the Port of Discharge."

The provisions of this set are made applicable to transportation either by railroad or by water, and provide for varying liability according as the transportation is by rail or water.

Clause 3 provides that the carrier shall not be liable for loss or damage, unless written notice be given within 4 months of the delivery of the goods.

Damage arising from or consequent upon sweating is not excepted in the second set of conditions.

Theodore L. Bailey, of New York City (Loring R. Lecraw, of New York City, of counsel), for appellants.

Carter & Phillips, of New York City (Robert Phillips, of New York City, of counsel), for appellee.

Before MANTON and MACK, Circuit Judges, and CAMPBELL, District Judge.

CAMPBELL, District Judge (after stating the facts as above). [1] The Luckenbach Steamship Company, Inc., accepted the merchandise for transportation without its own bill of lading. It became liable through the adoption of the bill of lading of the Canadian Pacific Railroad Company.

The merchandise was damaged by sweat of the hold, and notice of claim was not given in writing to the Luckenbach Steamship Company, Inc., in 10 days, but was given in 40 days.

The determination of this suit depends upon what is the seaboard port of discharge mentioned in the bill of lading.

The part of the bill of lading which particularly relates to the port of discharge reads:

"Shipped * * * on the steamship Empress of Asia, * * * at the port of Kobe, * * * to be delivered * * * from the ship's tackle * * * at the port of Vancouver, * * * unto the Canadian Pacific Railway Company, * * * by whom the goods shall be delivered to the railway company, or steamship company, or other carriers designated herein or intended to continue the transit, for forwarding * * * to the station nearest to New York via Panama. * * * *"

Two places are mentioned in the bill of lading, the port of Vancouver and the station nearest to New York, which, of course, under the circumstances, is New York.

It is significant that New York is not named as the port of New York, but the words "New York via Panama" are written, not printed. This, however, under the circumstances, makes no difference in the construction of the bill of lading.

But one vessel, the Empress of Asia, is mentioned, and it is expressly provided that the property shall be delivered from the ship's tackle at the port of Vancouver, where the responsibility of the ship and its owner shall cease.

This delivery is to be made to the Canadian Pacific Railway Company, by whom delivery shall be made to the railway company, or steamship company, or other carriers designated therein for forwarding.

That the shipper may not have used the form customarily used for all-water shipments is of no moment, because the form used made provision for continuing transit by railway company or steamship company.

There are two sets of liberties, exceptions, and stipulations, viz. the first, "with respect to the service until delivery at the seaboard port of discharge as within mentioned;" the

second, "with respect to the service after delivery as above specified at the port of discharge."

To construe the bill of lading as describing New York as the port of discharge, in accordance with appellee's contention, would make the second set of liberties, exceptions, and stipulations a nullity.

To construe the bill of lading in accordance with appellants' contention would give effect to both sets of liberties, etc., the first set until discharge at the port of Vancouver, from the only vessel named; the second set from that time until final delivery at New York.

To construe it in accordance with appellee's contention would not give effect to the whole instrument.

[2] That construction which gives effect to the whole instrument is to be preferred (Carver on Carriage of Goods by Sea [6th Ed.] § 173); and it is clear that it was contemplated that the goods might be forwarded by water after being discharged at the port of Vancouver, because it was provided in the bill of lading that the merchandise, after being discharged at the port of Vancouver, "shall be delivered to the railway company or steamship company or other carriers for forwarding."

No damage to the property occurred while on the Empress of Asia, but the damage was sustained while on appellee's ship, Lewis Luckenbach.

Applying the second set of liberties, etc., the appellant had 40 days to file its claim, and the same was filed well within that time, and the appellee cannot urge sweating of the cargo as a defense.

The port of Vancouver must be regarded as the seaboard port of discharge.

The decree is reversed, with costs in both courts, and the District Court is directed to enter an interlocutory decree in conformity with this opinion.